**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RICHARD J. ROBERTS,

        Plaintiff,

v.

PRINCIPAL LIFE INSURANCE,

        Defendant.
_____/

CASE NO.  07-11936

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ERISA PREEMPTION GROUNDS, GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE 56 AND MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULE 12(C), AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT I**

Before the Court are three motions: Defendant Principal Life Insurance Company's Motion for Summary Judgment on ERISA Preemption Grounds (Doc. No. 75), Defendant's Motion for Summary Judgment Pursuant to Federal Rule 56 and Motion for Judgment on the Pleadings Pursuant to Federal Rule 12(c) (Doc. No. 76), and Plaintiff's Motion for Summary Judgment on Count I (Doc. No. 71).  The Court heard oral argument on November 7, 2008, and at the conclusion of the hearing took this matter under advisement.  For the reasons that follow, Defendant's Motion for Summary Judgment on ERISA Preemption Grounds is DENIED, Defendant's Motion for Summary Judgment Pursuant to Federal Rule 56 and Motion for Judgment on the Pleadings Pursuant to Federal Rule 12(c) is GRANTED in part and DENIED in part, and Plaintiff's Motion for Summary Judgment on Count I is DENIED.

## I. FACTS

Plaintiff Richard Roberts, President of Colonial Mold Inc., filed this suit seeking payment of long-term disability benefits under a policy issued by Defendant Principal Life Insurance Company ("Principal Life"). Defendant issued policy number 750580 to Roberts on August 9, 2001.

On March 4, 2002, Plaintiff was in an automobile accident and suffered a compression fracture of his T-12 vertebra, located in the mid-back. Shortly after the accident, Roberts returned to work on a full-time basis.

In July 2004, Plaintiff submitted a claim for long-term disability benefits. Def.'s Ex. H. In his claim, he indicated that he had suffered a fractured back and was disabled as a direct result. According to the claim information, Plaintiff suffered an income loss that amounted to more than 70% of his pre-accident earnings. Principal Life approved payment of the benefit with a reservation of rights. It began paying Plaintiff his monthly benefit retroactive to the date he submitted his claim for benefits.

As part of its investigation, Principal Life sought to determine what portion of Plaintiff's claimed medical condition was attributable directly to a covered condition under the policy, and how much of any income loss Plaintiff suffered after his accident was directly attributable to a covered condition.[1] Because Plaintiff was still working, his benefit was to be calculated under the Residual Disability Rider.

In June 2006, Principal Life sent Roberts a letter informing him that his medical condition was only nominally related to the compression fracture and it would be reducing

---

[1] Plaintiff filed a personal injury lawsuit against the driver and owner of the other vehicle involved in the accident. He did not assert any wage loss claim in that suit, which he settled.

his benefit payment to 25% of any income loss.  Plaintiff then stopped cooperating and failed to provide requested proof of loss documentation.  Consequently, Principal Life suspended benefit payments.  Roberts received his last payment in October 2006.

He filed suit on April 8, 2007, in Macomb County Circuit Court.  Defendant timely removed on the basis of diversity of citizenship.

## II. STANDARDS OF REVIEW

Under Rule 56(c), a court should grant a motion for summary judgment only if the evidence indicates that no genuine issue of material fact exists.  To avoid summary judgment, the opposing party must set out sufficient evidence in the record to allow a reasonable jury to find for him at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  A court tests the sufficiency of the evidence against the substantive standard of proof that would control at trial.  Anderson, 477 U.S. at 248.

The moving party must show that there is an absence of evidence to support the non-moving party's case.  Celotex v. Catrett, 477 U.S. 317, 325 (1986).  "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.  A court disposing of a summary judgment motion must consider the evidence in the light most favorable to the non-moving party.  Matsushita, 475 U.S. 574.

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving

3

party is nevertheless clearly entitled to judgment." Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 549 (6th Cir. 2008) (citing JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation omitted)).

## IV.  ANALYSIS

### A.  Does ERISA Govern the Dispute?

The parties dispute whether the policy is part of an employee benefit plan established and maintained by Robert's employer, Colonial Mold, Inc., and therefore governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*  ERISA by its terms preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  Principal Life maintains that this dispute is governed by ERISA, and Plaintiff's state claims must be dismissed.

> The statute defines an "employee benefit plan" as
>
> any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services. . . .

Id. § 1002(1).

 The first step of the analysis is whether the policy satisfies the statutory definition, that is whether the policy is provided by "any plan, fund, or program established or maintained by an employer. . .for purpose of providing [benefits] for its participants."  29 U.S.C. § 1002(1).  Courts employ a three-step inquiry to determine whether a plan qualifies as an ERISA plan. Thompson v. American Home Assurance Co., 95 F.3d 429,

434 (6th Cir. 1996).  First, a court considers the Department of Labor's "safe harbor" regulation, which articulates the criteria for exemption from ERISA.  Next, the court assesses whether there was a "plan" by determining whether, "from the surrounding circumstances, a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits."  Id. (citation omitted).  Finally, the court determines whether the employer "established or maintained" the plan with the intent of providing benefits to its employees."  Id. (citations omitted).

### 1. Safe Harbor

The safe harbor regulation reads in relevant part:

For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

A policy qualifies for exemption only is it satisfies all four safe harbor factors. Thompson, 95 F.3d at 435.  Here, the applicability of the first criterion is challenged.

5

Specifically, Principal Life argues that Colonial Mold purchased the policy for Plaintiff and supports its position with evidence that Colonial Mold paid all the premiums due under the policy. It is undisputed that invoices were sent to Colonial Mold's address and that the payments were made on Colonial Mold corporate checks, signed by the company Treasurer, Cathy Roberts, who is Plaintiff's wife. See Def.'s Exs. F, G, N.

These facts do not satisfy Defendant's burden on summary judgment. According to Roberts, at the time he purchased the policy, he had loaned Colonial Mold hundreds of thousands of dollars pursuant to a "loan from officer" agreement. The loans were recorded on the bookkeeping system. Colonial Mold paid the premiums as part of the loan repayment, and the premium amount reduced the amounts owed to Roberts. Plaintiff, his wife, Dennis Petri, the company accountant, and the company records all support Plaintiff's assertion that this arrangement existed. Plaintiff has provided a copy of a Promissory Note and Security Agreement for the loan. Pl.'s Ex. 2. Plaintiff also provides letters from the company's accounting firm verifying the balance of the loan, the interest rate, and that the loan was an "on demand" loan. Pl.'s Ex. 3. The evidence suggests that the ultimate financial responsibility for the payment of premiums was on Roberts, not Colonial Mold.

Therefore, the Court cannot say as a matter of law that Colonial Mold made financial contributions to policy. Colonial Mold directed its repayment of money owed to Roberts to Principal Life, a financial transaction that may not constitute payment of the premium, given Plaintiff's explanation of why Colonial Mold wrote those checks. Although Principal Life disputes Plaintiff's explanation because there is no written agreement showing that the payments were made to reduce Colonial Mold's debt to Roberts, in light of the testimony of Plaintiff, the accountant, the Treasurer, and the financial documents,

6

the Court finds a genuine issue of material fact. The Court's finding is not altered by the parties argument about the treatment of the expense on tax returns. See Def.'s Reply, Ex. B. In sum, Defendant has failed to show that the first criteria is not satisfied as a matter of law.

### 2. Surrounding Circumstances

As for the second part of the inquiry, a policy is a "plan" if "from the surrounding circumstances a reasonable person could ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Smith v. Hartford Ins. Group, 6 F.3d 131, 136 (3d Cir. 1993). Plans do not have to be written.

> To be an employee welfare benefit plan, the intended benefits must be health, accident, death, disability, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits; the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund, or program

Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982).

Here, the surrounding circumstances afford a reasonable person, assessing those circumstances, the ability to ascertain information about intended benefits, a class of beneficiaries, and the procedures for receiving benefits. Less clear, however, is the source of financing. According to the Policy Summary, Pl.'s Ex. 1, the insured and owner of the policy is Richard J. Roberts, and he is responsible for premiums. The policy is entitled "Individual Disability Insurance Policy", and the premium statement likewise identifies it as such. Compare Williams v. Wright, 927 F.2d 1540, 1544-45 (11th Cir. 1991) (holding that plan covering single employee funded by employer's general assets was an employee benefits plan). The Court cannot conclude as a matter of law that

7

Robert's entitlement to disability benefits stems from his "employee status in an employment relationship," Donovan, 688 F.2d at 1371, so even if the safe harbor did not exempt this policy, this inquiry would not salvage Defendant's claim that it is entitled to summary judgment on this issue.

### 3. Employer Intent

Finally, Defendant argues that the purchase of insurance by Colonial Mold constitutes strong evidence that the employer has established or maintained the plan under ERISA. Randol v. Mid-West Nat'l Life Ins. Co., 987 F.2d 1547 (11th Cir. 1993) (where employer deducted from paycheck and contributed $75 toward each premium payment, employer had maintained policy); Brundage-Peterson v. Compcare Health Services Ins. Corp., 877 F.2d 509, 511 (7th Cir. 1989) (where the employer arranged and paid for insurance, ERISA plan created); Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 464 (10th Cir. 1997) (mere purchase of insurance not conclusive, but is evidence that employer has expressed an intention to provide long term benefits). This argument is flawed for the reasons discussed in the Court's analysis of the safe harbor provision. Specifically, Roberts has advanced evidence that Colonial Mold did not pay for the benefit on his behalf; it paid pursuant to a debt it owed him. Although there is no single documentation detailing this loan repayment arrangement, the other evidence in this record supports Plaintiff's position, as does the testimony of those involved.

Other relevant factors likewise support Plaintiff's position. For example, courts consider the scheme of benefits and draw inferences from that scheme. Colonial Mold provides benefits to employees, but not long-term disability benefits. Even if long-term disability benefits would be a natural addition to the scheme of benefits provided through other

group plans offered to employees, and even if the Court accepts that it is not unusual for an employee to extend enhanced income protection benefits to key and executive employees,[2] there is no evidence that such a benefit was offered to Cathy Roberts as Treasurer of Colonial Mold. The only employee with such coverage is Plaintiff, and there is no evidence before the Court that Colonial Mold researched this benefit and considered it for employees. Consequently, the Court rejects Principal Life's argument that the existence of a short-term disability policy provided to employees as well as dental, vision, and life insurance demonstrate Colonial Mold intended to establish the long-term disability policy under ERISA. Although Roberts erroneously represented that disability was unavailable to employees, this testimony reflects his credibility and knowledge; it does not satisfy Defendant's summary judgment burden. There is no evidence that Roberts pursued this benefit in his capacity as President of Colonial Mold for himself as an employee. To the contrary, Roberts worked individually with Kevin J. Bates of Cambridge Wealth Strategies to purchase an individual disability insurance policy insuring himself. Moreover, Bates assured Roberts it was not part of an ERISA plan. Pl.'s Exs, 9 and 10.

Therefore, Defendant has failed to establish as a matter of law that ERISA governs the policy, and its Motion for Summary Judgment is denied. Accordingly, Plaintiff's state claims are not preempted, and the Court directs its attention to Defendant's Motion for Summary Judgment on Count III and for Judgment on the Pleadings on Counts II and V.

---

[2] The MMA Policy that covers all employees indicates that the president receives the highest life insurance benefits. The same is true of the short-term disability benefits. The employee benefits manual indicates that there is multiple coverage options for health insurances as well. Def.'s Ex. P, Colonial Group Guide to Employee Benefits.

### B. Availability of the Uniform Trade Practices Act

Count II sets forth a claim under the Uniform Trade Practices Act ("UTPA"), which prohibits deceptive practices in the business of insurance. The Act empowers the insurance commissioner to investigate and punish violations. Although Plaintiff now concedes that he has no private cause of action to enforce its provisions, he nevertheless seeks a penalty interest as a first-party insured. Specifically, Plaintiff asks for 12% penalty interest under MICH. COMP. L. § 500.2006(4), which authorizes such a penalty.

The Michigan Legislature plainly expressed in the language of the statute that "[i]f benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance." Accord Griswold v. Lexington ins. Co., 741 N.W.2d 549 (Mich. Ct. App. 2007) (holding that a first-party insured is "entitled to 12 percent penalty interest under the Unfair Trade Practices Act (UTPA) if a claim is not timely paid by the insurer, irrespective of whether the claim is reasonably in dispute"). To succeed, Roberts must show he was entitled to benefits under the policy.

Accordingly, the Court dismisses Plaintiff's claims pursuant to the other provisions cited in his Complaint, but allows his request for an interest penalty to remain.

### C. Viability of Intentional Infliction of Emotion Distress Claim

Count III sets forth a claim for intentional infliction of emotional distress. "To establish a prima facie claim of this claim, a plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." Walsh v. Taylor, 689 N.W.2d 506 (Mich. Ct. App. 2004) (citation omitted).

"The threshold for showing extreme and outrageous conduct is high," Roberts v. Automobile-Owners Ins. Co., 374 N.W.2d 905 (Mich. 1985), and the trial court makes the initial determination as to whether a defendant's conduct could be deemed extreme and outrageous.  Sawabini v. Desenberg, 372 N.W.2d 559 (Mich. Ct. App. 1985).  To succeed in showing that a plaintiff has suffered "severe emotional distress," evidence must establish that "the distress inflicted is so severe that no reasonable man could be expected to endure it."  Roberts, supra at 911 (quoting Restatement Torts, 2d, § 46, comment j, p 77).  The parties dispute whether Roberts' claim fails given it arises out of a breach of contract claim.

Under governing case law, a mere bad faith breach of contract such as a refusal to pay insurance benefits does not satisfy a plaintiff's burden to establish an intentional infliction of emotional distress.  Runions v. Auto-Owners Ins. Co., 495 N.W.2d 166 (Mich. Ct. App. 1992).  Failure to pay a contractual obligation does not amount to outrageous conduct for purposes of the tort of intentional infliction of emotional distress.  Even a wilful or bad-faith failure to pay the contractual obligation does not amount to outrageous conduct.  Roberts, 374 N.W.2d at 910.

The dispositive question is whether Roberts can establish a tort claim independent of his breach of contract claim.  The Court finds that the facts of this case, even viewed in the light most favorable to Plaintiff, do not satisfy the standard.  Here, the insurance company's efforts to resolve the claim do not rise to the level of extreme or outrageous either because of the amount of money it offered Roberts to settle his claim or the tactics it used to investigate, including taping Plaintiff, talking to his neighbors, and requesting financial documents.  Nor does its threat to notify the IRS satisfy the standard.

11

In sum, the facts of this case, even construed in the light most favorable to Plaintiff cannot support this cause of action. Accordingly, the Court grants Defendant's request to dismiss Count III.

### D.  Applicability of the Michigan Consumer Protection Act

Count V sets forth a claim under the Michigan Consumer Protection Act ("MCPA"). The MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MICH. COMP. L. § 445.904(1)(a).  Principal Life maintains that the Act does not apply to claims arising out of the insurance industry because the State Commissioner of Insurance regulates the industry. Consequently, claims arising out of the industry are exempt from the MCPA.

Early case law permitted claims against insurers under the Act. See Smith v. Globe Life Ins. Co., 597 N.W.2d 28 (Mich. 1999) (permitting a private action pursuant to § 445.911 that arose out of misconduct made unlawful by Chapter 20 of the Insurance Code). Subsequent amendments to MICH. COMP. L. § 445.904, enacted in 2000, after Smith was decided, eliminated the ability to bring a MCPA claim against an insurance company under MICH. COMP. L § 445.911. Rodgers v. North American Ins. Co., No. 251926, 2005 WL 1683548 at *2-3 (Mich. Ct. App. July 19, 2005) (unpublished); Kitterman v. Michigan Educational Employees Mut. Ins. Co., No. 247428, 2004 WL 1459523, *6 (Mich. Ct. App. June 29, 2004). Because the amendments eliminated a plaintiff's ability to enforce the provisions of the MCPA against insurance companies through § 445.911, "the MCPA no longer applies to insurance companies." Milhouse v. Michigan Basic Property Ins. Ass'n, No. 257701, 2005 WL 3501364 at *5 (Mich. Ct. App. Dec. 22, 2005) (unpublished).

12

Accordingly, the Court agrees with Defendant that Count V of Plaintiff's Complaint fails to state a claim. In sum, the Court denies Defendant's request for dismissal of Count II, grants summary judgment on Count III, and grants Defendant's request for dismissal of Count V.

### E. Breach of Contract

Plaintiff moves the Court to award it summary judgment on Count I of its Complaint, which advances a claim for breach of contract. His disability policy includes a residual disability benefit rider that covers a policyholder who is not totally disabled. The rider applies if the holder is "able to perform some, but not all, of the substantial and material duties of his occupation. . . ." Ex. 1, p. 26. The parties agree that coverage applies if Roberts is not totally disabled and that solely due to his injury or sickness he is unable to perform some but not all of the substantial and material duties of his occupation. See Brief in Support of Plaintiff's Motion for Summary Judgment on Count I at 19.

The parties disagree about the cause of Robert's disability. Principal Life maintains Roberts' inability to perform his job must result "solely due to injury or sickness," see Def.'s Response Ex. C, The Residual Disability Rider, and that Roberts' claim is questionable because the policy precludes coverage for "[a]ny injury to or disease or disorder of the spine, its muscles, ligaments, discs, nerve roots (including radiculopathy or sciatica), including any treatment or operation therefore or complication thereof, except for fractures, burns, or lacerations due to trauma." Def.'s Ex. B. Defendant asserts Plaintiff's symptoms are due to other conditions of the spine and nerves specifically excluded form coverage under the Additional Exception Rider to the policy; Plaintiff contends his symptoms are caused by the fracture.

13

In sum, the parties contest what portion, if any, of Plaintiff's medical condition is directly attributable to a covered condition under the policy, and how much of any income loss suffered by Plaintiff after his accident is attributable directly to a covered condition. The Court finds that factual disputes preclude summary judgment on this claim, given the disputes over the causes of Plaintiff's current medical status, his loss of earnings, and requested proof of loss documentation.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendant's Motion for Summary Judgment on ERISA preemption grounds, **GRANTS** in part and **DENIES** in part its Motion for Summary Judgment Pursuant to Federal Rule 56 and Motion for Judgment on the Pleadings Pursuant to Federal Rule 12(c), and **DENIES** Plaintiff's Motion for Summary Judgment on Count I (Breach of Contract).

**IT IS SO ORDERED.**

                                            s/Marianne O. Battani
                                            MARIANNE O. BATTANI
                                            UNITED STATES DISTRICT JUDGE

Dated: March 12, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were mailed to counsel of record on this date by ordinary mail and electronic filing.

                                            s/Bernadette M. Thebolt
                                            Deputy Clerk